■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HECTOR MALDONADO, Also Known as HECTOR TORRES, Also Known as AUGUSTINE MOLINA, Appellant. [666 NYS2d 224] —Mikoll, J. P. Appeal from a judgment of the County Court of Schenectady County (Reilly, J.), rendered April 25, 1994, upon a verdict convicting defendant of the crime of robbery in the first degree (two counts), burglary in the first degree (two counts), robbery in the second degree and menacing.

Between 9:00 P.M. and 10:00 P.M. on November 21, 1992, three Puerto Rican males forcibly entered Lisa Santiago's apartment on Odell Street in the City of Schenectady, Schenectady County, directed the occupants to lie on the floor, took cash and jewelry from them, and ransacked the apartment looking for more cash and drugs. One of the intruders was armed with a pistol with which he accidentally shot himself in the leg. The intruders then fled. Santiago reported the crime to the Schenectady police, describing the intruders as three Puerto Rican males, one of whom she recognized as a former boyfriend, Miguel, and indicating that one of them had shot himself in the leg.

The same evening, at approximately 10:40 P.M., defendant appeared at a hospital in the City of Albany for treatment of a gunshot wound in his left leg. Defendant was in the company of his codefendant, Miguel Oquendo, and a third Puerto Rican man. Defendant and his companions told hospital personnel that defendant's gunshot wound was inflicted when he was shot while at a pay telephone booth in Albany. As required, hospital personnel notified Albany police that they were treating a gunshot victim. When Albany police arrived at the hospital, they interviewed defendant and his companions and attempted to ascertain the location of the shooting. Efforts to establish the location by driving the two uninjured men around downtown Albany were unsuccessful and, coupled with later developments, caused the Albany officers to be suspicious about the reported crime.

Subsequently, Albany police learned that Schenectady police were investigating a robbery in that City involving three Puerto Rican males, one of whom had shot himself in the leg. Following receipt of this information, Albany police advised defendant of his *Miranda* rights and took a written statement from him. The statement recapitulated that which defendant had told Albany police upon their arrival (and prior to his receipt of *Miranda* warnings) as to how he had sustained the gunshot wound; he did not implicate himself in the Schenectady crimes.

Following telephone conversations between Albany and Schenectady police, during which each agency apprised the other of the facts and details of their investigation, Schenectady police proceeded to the Albany hospital and took over the case. While at the hospital, the Schenectady police officer in charge received additional information that one of the victims of the robbery had identified two of the assailants by name, which names matched those of two of the men at the hospital, including defendant. Shortly after the arrival of Schenectady police, defendant's two uninjured companions were placed under arrest by Schenectady police and charged with crimes relating to the burglary and robbery of Santiago. Schenectady police also posted guards outside defendant's room pending his treatment, and defendant's physician informed him that he would be released into Schenectady police custody following his treatment.

Defendant's contentions on appeal all relate to the propriety of County Court's rulings on pretrial motions to suppress his oral and written statements, and physical evidence in the form of the bullet removed from his leg, his clothing and items recovered from a search of his clothing at the hospital.*

We find no error in County Court's denial of these suppression motions. The oral and written statements were given by defendant to Albany police prior to the arrival of the Schenectady police who arrested him. When defendant arrived at the hospital, he presented himself as a crime victim. The reason for the arrival of Albany police was that they had been notified by the hospital, as required by law, that they were treating a gunshot victim. Albany police arrived to take a crime report and commence an investigation. Defendant's oral statement to Albany police reiterated what he had told hospital personnel as to the circumstances of his being shot, i.e., that he was the victim of a robbery attempt and an unprovoked shooting. Defendant was neither under arrest nor in custody at that time, nor is there any indication in the record that defendant believed himself to be in custody at this time. When the written statement was taken, it was preceded by the required *Miranda* warnings and the record indicates that defendant waived his rights. As noted, substantively the statement reiterated defendant's report of being the victim of a crime. The record does not support defendant's contention on this appeal

---

* Although defendant also challenges the police search of the van belonging to his employer which was used by defendant and his companions to travel to the hospital in Albany, since no evidence was seized therefrom or introduced at trial we do not address this claim.

that he was subjected to "custodial interrogation" which resulted in the eliciting of involuntary incriminating statements.

Defendant challenges the police "seizure" of the bullet removed from his leg during surgery, contending that the surgery itself was the result of "consistent pressure from the hospital staff, due to police presence, and not a concern for [defendant's] health". This contention is difficult to reconcile with defendant's testimony at the suppression hearing, wherein he acknowledged that while he initially declined surgery to remove the bullet, he made the decision to proceed after his physician advised him of the risk of developing gangrene. He also acknowledged that he made the decision without police intervention or influence, as did the People's witnesses. The intrusion into defendant's body to retrieve the bullet cannot therefore be characterized as a governmental or police intrusion so as to implicate US Constitution 4th Amendment protections. As to the disposition of the bullet itself following removal, County Court found that the police came into possession of it lawfully, by virtue of a written consent agreement which defendant signed at the hospital's request, prior to surgery and without police pressure, authorizing the retention or disposition of any specimens removed from his body during the surgery. There is no basis, in fact or in law, to disturb this finding.

We turn finally to defendant's contention that the seizure and search of his clothing by Schenectady police following their arrival at the hospital was the product of his unlawful warrantless arrest. County Court found that the search and seizure of defendant's clothing was justified as incident to his de facto arrest by Schenectady police upon their arrival at the hospital. Neither party quarrels with the court's finding that a de facto arrest occurred when Schenectady police arrived at the hospital; defendant's contention is that the arrest lacked the requisite probable cause. We likewise reject this contention, finding as we do that the record adequately supports the court's finding of probable cause.

Examining the quantum of evidence possessed by the Schenectady police when they arrived at the hospital and before they effected the de facto arrest of defendant, we find that the police possessed the following information: a robbery by three Puerto Rican males, one of whom shot himself in the leg, which occurred in Schenectady between 9:00 P.M. and 10:00 P.M., approximately one block away from the Schenectady addresses given by the three Puerto Rican males who had come to the

hospital at 10:40 P.M., one of whom had a gunshot wound to the leg; one of the men at the hospital stated that his name was "Miguel", which is the name given by Santiago as that of her former boyfriend whom she identified as one of the perpetrators; Albany police were suspicious about the crime reported by the three men based upon their inability to ascertain its location despite attempting to do so by driving the two uninjured men around various locations in Albany, and a second victim of the robbery had relayed information to another law enforcement agency that identified two of the perpetrators as defendant and Miguel Oquendo. This information provided police with the requisite probable cause to effect a warrantless arrest (see, People v Maldonado, 86 NY2d 631, 635; People v Chipp, 75 NY2d 327, cert denied 498 US 833; People v Hicks, 68 NY2d 234; People v Rivera, 210 AD2d 895). The search and seizure of defendant's clothing was properly found to be incident to his lawful arrest (see, People v Magee, 208 AD2d 977; People v Schobert, 93 AD2d 949). Although not necessary in view of our determination, we note that County Court's finding that defendant consented to the search of his clothing appears similarly sound.

Mercure, Crew III, Yesawich Jr. and Peters, JJ., concur. Ordered that the judgment is affirmed.